**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LOKI BRANDS, LLC, *et al.*,**<br><br>Plaintiffs,<br><br>v.<br><br>**MATTHEW PLATKIN, *et al.*,**<br><br>Defendants. | Civil Action No. 24-9389 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon Plaintiffs' Loki Brands LLC; North Fork Distribution, Inc. d/b/a Cycling Frog; Cantrip, Inc.; Alpha Omega Collectis LLC d/b/a/ Apollo Sciences; Alternative Health Distribution LLC d/b/a CannaAid; and M&A LL Holdings LLC d/b/a Legal Leaf New Jersey (collectively, "Plaintiffs") Motion for Summary Judgment (the "Motion," ECF No. 6.)[1]  The Motion seeks to enjoin the New Jersey Hemp Act Amendments ("NJHAA"), Pub. L. 2024, c. 73.  Plaintiffs submitted a brief in support of their Motion, ("Moving Br.," ECF No. 6-1), to which Defendants Matthew J. Platkin, in his official capacity as Attorney General of New Jersey; Dianna Houenou, in her official capacity as Chair of the New Jersey Cannabis Regulatory Commission; and Edward D. Wengryn, in his official capacity as New Jersey Secretary

---

[1] Plaintiffs originally filed their motion as an Order to Show Cause for a Preliminary Injunction enjoining Defendants from enforcing portions of the newly enacted New Jersey law, Pub. L. 2024, c. 73.  After a telephonic conference with the parties, the Court converted the initial Motion for an Order to Show Cause (ECF No. 6) to a Motion for Summary Judgment without objection from the parties.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (recognizing district court's authority to enter summary judgment *sua sponte* where adequate notice is provided); *Gibson v. City of Wilmington*, 355 F.3d 215, 224 (3d Cir. 2004) (Notice is adequate where there is "the presence of a fully developed record, the lack of prejudice, [and] a decision based on a purely legal issue.")

of Agriculture (collectively, "Defendants") filed an opposition, ("Opp'n Br.," ECF No. 16.) Plaintiffs submitted a reply.  ("Reply Br.," ECF No 17.)

In light of the NJHAA's October 12, 2024 effective date, the Court addresses the Motion on an expedited basis.  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons set forth below, the Court will **GRANT-IN-PART and DENY-IN-PART** Plaintiffs' Motion.  The State will be enjoined from enforcing the portions of the NJHAA that violate the Farm Bill's express preemption provision and the dormant Commerce Clause. Notably, the provision banning the sale or distribution of THC containing products to anyone under 21 years of age—which is not being challenged—shall remain in effect.  *See* Pub. L. 2024, c. 73, § 4(b)(2).

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A.  FACTUAL BACKGROUND

The technical background of hemp and marijuana leading up to the Motion is undisputed. Hemp is the common name for *Cannabis sativa L.*, the plant that grows hemp and marijuana. ("Declaration of Jason Martinez ¶¶ 7–8," ECF No. 6-10.)[2]  Under federal law, hemp means "the plant *Cannabis sativa L.* and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a

---

[2] Parts of the *Cannabis sativa* plant have been controlled under the federal Controlled Substances Act since 1970 under the drug class "Marihuana" *See* 21 U.S.C. § 802(16).  Under the federal Controlled Substances Act, the term "marihuana" means "all parts of the plant *Cannabis sativa L.*, whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin."  Such a term "do[es] not include hemp . . . or the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination."

delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o.

According to the Food and Drug Administration, "Cannabis is a plant of the Cannabaceae family and contains more than 80 biologically active chemical compounds," including tetrahydrocannabinol ("THC"). (Scientific Data and Information About Products Containing Cannabis or Cannabis-Derived Compounds; Public Hearing; Request for Comments, 84 Fed. Reg. 12969, 12970 (Apr. 3, 2019); Declaration of Jason Martinez ¶ 9). These compounds are known as "cannabinoids." (Declaration of Jason Martinez ¶ 9.) THC has several cannabinoid isomers (distinct arrangements of the same molecular compounds), including delta-8 ("Delta-8 THC"), delta-9 ("Delta-9 THC"), and delta-10 ("Delta-10 THC"). (*Id.* ¶ 10.) Delta-9 THC is the most commonly known cannabinoid and is the principal psychoactive agent in cannabis. (*Id.* ¶ 10.) Delta-8 THC, however, also "has psychoactive and intoxicating effects, similar to delta-9 THC." *5 Things to Know About Delta-8 Tetrahydrocannabinol – Delta-8 THC*, FDA, https://www.fda.gov/consumers/consumer-updates/5-things-know-about-delta-8-tetrahydrocannabinol-delta-8-thc [https://perma.cc/5K3L-U6GV] (last updated May 4, 2022).

To be clear, hemp is different from marijuana and other cannabis products because "[t]he natural amount of [D]elta-8 THC in hemp is very low, and additional chemicals are needed to convert other cannabinoids in hemp, like CBD, into [D]elta-8 THC (i.e., synthetic conversion)." *Id.* Hemp has a lower concentration of Delta-9 THC and other THC compounds as well, mainly because it comes from a different part of the cannabis plant than marijuana. (*Id.*; *see also* Declaration of Jason Martinez ¶ 11.) But despite having lower levels of THC, natural hemp contains cannabidiol, a compound that, as mentioned above, can be synthetically converted to THC isomers, which can be harmful and cause psychoactive effects. (Opp'n Br. at 8–9.)

This case implicates several federal and state statutes, including the Agriculture Improvement Act, the New Jersey Hemp Farming Act, the NJHAA, the New Jersey Controlled Dangerous Substance Act, and the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act. The way these statutes interact is vital to an understanding of this dispute. Therefore, a discussion of each statute is warranted.

        1.      <u>Agriculture Improvement Act (Farm Bill)</u>

On December 20, 2018, President Donald J. Trump signed into law the Agriculture Improvement Act, known as the Farm Bill. *United States v. Rivera*, 74 F.4th 134, 135 (3d Cir. 2023). Under the Farm Bill, "hemp" means "the plant *Cannabis sativa L.* and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a [D]elta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o. The Farm Bill does not provide a definition of "hemp products." However, courts that have construed this provision have found that hemp products would include any products which are made with "hemp" as defined in the Farm Bill. *See AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 691 (9th Cir. 2022); *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 547 (7th Cir. 2020.); *Duke's Invs. LLC v. Char*, Civ. No. 22-00385, 2022 WL 17128976, at *7 (D. Haw. Nov. 22, 2022).

Additionally, among other things, the Farm Bill amended the federal Controlled Dangerous Substances Act to exclude hemp from the definition of marijuana. *Rivera*, 74 F.4th at 135–36 (citing Pub. L. 115-334, 132 Stat. 4490). Under the Controlled Dangerous Substances Act, "the terms 'marihuana' and 'marijuana' mean all parts of the plant *Cannabis sativa L.*, whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin." 21 U.S.C. § 802(16). The Farm Bill introduced the following exception to the Controlled Dangerous

Substances Act: "[M]arijuana" does not include "hemp, as defined in section 1639o of Title 7." *Id.* The Farm Bill also removed "[THC] in hemp," or hemp-derived products containing a THC level of "not more than 0.3 percent" from the Controlled Dangerous Substances Act, 21 U.S.C. 812(c), thereby decriminalizing hemp and hemp products. The Farm Bill further excluded industrial hemp from "marijuana" thus also removing it from the federal list of controlled dangerous substances. Pub. L. 115-334 § 12619. The Farm Bill also amended the Agricultural Marketing Act of 1946 "to allow States to regulate hemp production based on a state or tribal plan." H.R. Rep. No. 115.

Structurally, subchapter VII of the Farm Bill governs hemp production. More specifically, 7 U.S.C. § 1639p governs the intersection between "hemp" as defined in the Farm Bill and how States and Indian Tribes may regulate hemp. Notably, the Farm Bill includes both an anti-preemption provision and a preemption provision. Its anti-preemption provision states that "[n]othing in this subsection preempts or limits any law of a State or Indian tribe that . . . (i) regulates the production of hemp; and (ii) is more stringent than this subchapter." 7 U.S.C. § 1639p(a)(3)(A). In contrast, its preemption provision—Section 10114 which governs interstate commerce—states that "[n]o State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable." Pub. L. 115-334, § 10114 (codified at 7 U.S.C. § 1639o note).

### 2. New Jersey Hemp Farming Act

The New Jersey Legislature passed the New Jersey Hemp Farming Act, Pub. L. 2019, c. 238, a similar statute to the Farm Bill, effective August 9, 2019. The New Jersey Hemp Farming Act is an act "concerning the cultivation, handling, processing, transport, and sale of hemp" in New Jersey and permits the manufacture and sale of hemp products. *See* Pub. L. 2019, c. 238.

N.J. Stat. Ann. § 4:28-7 provides that "[t]he Legislature finds and declares that hemp is a viable agricultural crop and a potentially valuable agricultural commodity in the State, and that hemp should be cultivated, handled, processed, transported, and sold in the State to the maximum extent permitted by federal law." Moreover, some of the purposes of the New Jersey Hemp Farming Act are to "promote the cultivation and processing of hemp," "promote the expansion of the State's hemp industry to the maximum extent permitted by federal law," and to "allow farmers and businesses to cultivate, handle, and process hemp, and to sell hemp products for commercial purposes." *Id.*

"Hemp" was originally defined in the New Jersey Hemp Farming Act similar to federal law as "the plant *Cannabis sativa L.* and any part of that plant, including the seeds of the plant and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a [D]elta–9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." N.J. Stat. Ann. § 4:28-8. Importantly, the New Jersey Hemp Farming Act stated that "[h]emp and hemp-derived cannabinoids, including cannabidiol, shall be considered an agricultural commodity and not a controlled substance due to the presence of hemp or hemp-derived cannabinoids." *Id.* The New Jersey Hemp Farming Act defined "Hemp Product" as "a finished product with a [D]elta–9 [THC] of not more than 0.3 percent that is derived . . . by processing a hemp plant . . . prepared in a form available for commercial sale." *Id.* Hemp products "shall not be considered controlled substances due to the presence of hemp or hemp-derived cannabinoids." *Id.*

### 3.    New Jersey Hemp Act Amendments S. 3235

On June 28, 2024, the New Jersey Legislature approved amendments to the New Jersey Hemp Farming Act, which Governor Philip D. Murphy signed into law on September 12, 2024. Pub. L. 2024, c. 73. Relevant here, the NJHAA changes and adds several definitions to the New

Jersey Hemp Farming Act, and becomes effective thirty days after the Governor's signature.

Under the NJHAA, "Hemp" now means

> the plant *Cannabis sativa L.* and any part of that plant, including the seeds of the plant and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a *total* tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.  Hemp and hemp-derived cannabinoids, including cannabidiol, shall be considered an agricultural commodity and not a controlled substance due to the presence of hemp or hemp-derived cannabinoids.

N.J. Stat. Ann. § 4:28-8 (emphasis added).  Thus, the definition of hemp in New Jersey no longer mirrors the federal definition in the Farm Bill.  *Compare* N.J. Stat. Ann. § 4:28-8 *with* 7 U.S.C. § 1639o.  The NJHAA also adds a definition for "Total THC" that includes the "total concentration" of Delta-8, Delta-9, and Delta-10, and other chemically similar compounds.  The effect of these changes in the NJHAA is to redefine hemp in New Jersey as anything with less than 0.3 percent of *total* THC, rather than just 0.3 percent of Delta-9 THC.

Moreover, "Hemp Product" is now defined as

> a finished product with a total tetrahydrocannabinol concentration of not more than 0.3 percent, and not more than 0.5 milligrams of total THC per serving and 2.5 milligrams of total THC per package. . . . Hemp products shall not be considered controlled substances due to the presence of hemp or hemp-derived cannabinoids.  *"Hemp product" shall not mean a cannabinoid product that is not derived from naturally occurring biologically active chemical constituents and shall not mean an intoxicating hemp product as defined in section 3 of Pub. L. 2021, c.16.*

*Id.* (emphasis added).  Therefore, the definition of "Hemp Product" now excludes an "Intoxicating Hemp Product."  *Id.*

The definition of an Intoxicating Hemp Product hinges partly on where it is produced and sold.  An Intoxicating Hemp Product is any product "cultivated, derived, or manufactured in this State from hemp regulated pursuant to the [Farm Bill] or the 'New Jersey Hemp Farming Act' that

is sold in this State [i.e. New Jersey] that has a concentration of total THC greater than 0.5 milligrams per serving or 2.5 milligrams per package." Pub. L. 2024, c. 73 § 3. An Intoxicating Hemp Product, therefore, must be cultivated, derived, or manufactured in New Jersey and sold in New Jersey. *Id.* Importantly, the definition of Intoxicating Hemp Product reiterates parts of the definition of "Hemp Product" by noting that an Intoxicating Hemp Product "shall not include a cannabinoid product that is not derived from naturally occurring biologically active chemical constituents and shall not include hemp products as defined in section 3 of Pub. L. 2019, c. 238." *Id.* Moreover, a "Cannabis Item" under the NJHAA now includes Intoxicating Hemp Products. *Id.* As such, the language of the NJHAA demonstrates that because "cannabis items" are not controlled dangerous substances ("CDS") in New Jersey, an intoxicating hemp product is not a CDS either. Additionally, the NJHAA puts Hemp Products, which are federally legal, under the purview of the state's Cannabis Regulatory Commission, the agency that oversees New Jersey's recreational and medicinal marijuana markets. *Id.*

Separately, the NJHAA states that "it shall be unlawful to sell or distribute a product intended for human consumption that contains [THC] in any detectable amount to a person under 21 years of age." Pub. L. 2024, c. 73, § 4(b)(2). Moreover, a person shall not sell or distribute intoxicating hemp unless the person is a holder of a valid and unrevoked plenary wholesale or distribution license or the person is approved by the commission to sell intoxicating hemp beverages. *Id.* These provisions concerning the sale of THC products to individuals under the age of 21 and the required approval to sell or distribute intoxicating hemp are not at issue in this case. Plaintiffs agree, as does the Court, that these provisions should be enforced.

When Governor Murphy signed the NJHAA into law, he stated that he was proud to sign a bill that makes it unlawful to sell or distribute intoxicating products to people under the age of

twenty-one years old.  Governor's Statement to S. 3235 (Third Reprint).  However, the Governor also noted some concerns.  *Id.*  He opined that "the late amendments to the bill included an amendment to the bill's definition of 'intoxicating hemp product' that has caused significant confusion."  *Id.*  According to the Governor, by adding the term "in this State" to the definition of "Intoxicating Hemp Product," some read the bill to "mean that authorized sellers may sell intoxicating hemp products in the newly regulated market only if the product is cultivated, derived, and/or manufactured in New Jersey."  *Id.*  Such a reading, he observed, would "defeat the purpose of the legislation by creating an enormous loophole contrary to the Legislature's purpose in passing the bill [and also] implicate concerns related to the United States Constitution's dormant commerce clause."  *Id.*  Despite these concerns, Governor Murphy signed the bill, to take effect 30 days after his signature.  *Id.*

### 4.    New Jersey Controlled Dangerous Substance Act

The Dangerous Substance Control Law, Pub. L. 1970, c. 226 (codified at N.J. Stat. Ann. § 24:21-1 to -56), more commonly known as the Controlled Dangerous Substance Act, is intended "to suppress illegal traffic in narcotic drugs enumerated in it."  *Bambu Sales, Inc. v. Gibson*, 474 F. Supp. 1297, 1299 (D.N.J. 1979).  Relevant here, under the Controlled Dangerous Substance Act, a "controlled dangerous substance" means "a drug, substance, or immediate precursor in Schedules I through V of article 2 of Pub. L. 1970, c. 226, marijuana, and hashish as defined in this section.  The term shall not include distilled spirits, wine, malt beverages . . . tobacco and tobacco products, and cannabis and cannabis items."

Under the Controlled Dangerous Substance Act, "Marihuana" means

> all parts of the plant *Cannabis sativa L.*, whether growing or not; the seeds thereof; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds, except those containing resin extracted from the plant.  "Marihuana" shall not mean: hemp and hemp products cultivated, handled, processed,

> transported, or sold pursuant to the "New Jersey Hemp Farming Act," Pub. L. 2019, c. 238; and cannabis as defined in section 3 of P.L. 2021, c. 16 which is cultivated and produced for use in a cannabis item, as defined in that section, in accordance with the "New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act," Pub. L. 2021, c. 16.

N.J. Stat. Ann. § 24:21-2.

N.J. Stat. Ann. § 24:21-5 lists the substances that are considered Schedule I under the Controlled Dangerous Substance Act. Pursuant to that section, after the enactment of the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act ("CREAMMA"), "marihuana [in certain circumstances] shall no longer be included in Schedule I, and shall not be designated or rescheduled and included in any other schedule by the director pursuant to the director's designation and rescheduling authority set forth in section 3 of Pub. L. 1970, c. 226." N.J. Stat. Ann. § 24:21-5(e)(10). Despite that, THC is considered a Substance I Controlled Dangerous Substance, "except when found in hemp or a hemp product cultivated, handled, processed, transported, or sold pursuant to the 'New Jersey Hemp Farming Act,' or cannabis or a cannabis item, . . . that is grown, cultivated, produced, or manufactured, or sold in accordance with" CREAMMA.[3] As explained earlier, a "Cannabis Item" under the NJHAA now includes "Intoxicating Hemp Products."

---

[3] According to Plaintiffs, the NJHAA redefines Hemp, Hemp Products, and Cannabis Items in the Controlled Dangerous Substances Act. Pub. L. 2024, c. 73, §§ 1–3. Under the NJHAA, there is no exception in Schedule I for Excluded Hemp, which is hemp with a Total THC concentration that exceeds 0.3 percent and a Delta-9 THC concentration that does not exceed 0.3 percent. Excluded Hemp is expressly excepted from the NJHAA's definitions of "Hemp" and "Hemp Product." Moreover, neither "Cannabis" nor "Cannabis Item" encompasses all Excluded Hemp. Accordingly, Plaintiffs argue that under the NJHAA, Excluded Hemp, the interstate commerce of which is protected by federal law, is a Schedule I controlled dangerous substance in New Jersey, and its possession, production, sale, transportation, or shipment from, to, or through the state is a criminal act. (Compl. ¶ 73–74.)

     5.    <u>New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA)</u>

CREAMMA concerns "the regulation and use of cannabis."  Pub. L. 2021, c. 16 (codified at N.J. Stat. Ann. § 24:6I-32).  Under CREAMMA, "Cannabis" means "all parts of the plant *Cannabis sativa L.*, whether growing or not, the seeds thereof, and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds."  *Id.*  "Cannabis" does not "include . . . hemp or a hemp product cultivated, handled, processed, transported, or sold pursuant to the 'New Jersey Hemp Farming Act.'"  *Id.*  Moreover, the term "drug" also "does not include: hemp and hemp products cultivated, handled, processed, transported, or sold pursuant to the 'New Jersey Hemp Farming Act.'"  *Id.*  The NJHAA effectively amends CREAMMA by including "Intoxicating Hemp Products" in the definition of "Cannabis Item."  Pub. L. 2024, c. 73, §§ 2–3.  Under CREAMMA and the NJHAA, "Intoxicating Hemp Products" are regulated similarly to Cannabis Items, and are thus decriminalized.

**B.  PROCEDURAL HISTORY**

Less than two weeks after Governor Murphy signed the NJHAA into law, Plaintiffs filed their initial Complaint on September 24, 2024.  (ECF No. 1.)  That same day, Plaintiffs sought a preliminary injunction to enjoin Defendants from enforcing the law.  (ECF No. 6.)  Plaintiffs submitted a brief in support of their order to show cause for a preliminary injunction, (ECF No. 6-2), several declarations (ECF Nos 6-8, 6-9, 6-10, 6-11, 6-12, 6-13), and exhibits.  The Court conducted a teleconference with the parties on September 26, 2024, (ECF No. 7), and thereafter converted the preliminary injunction application to a motion for summary judgment.  (ECF No. 13.)  Defendants submitted an opposition brief, (ECF No. 16), to which Plaintiffs submitted a reply, (ECF No. 17.)

## II.    <u>LEGAL STANDARD</u>

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 323. A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor." *Monione v. City of Jersey City*, 709 F.3d 181, 191 (3d Cir. 2013) (quoting *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although "it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits," *Anderson v. Davila*, 125 F.3d 148, 157 (3d Cir. 1997), in appropriate circumstances, however, a district court may convert a decision on a preliminary injunction application into a final disposition on the merits by granting summary judgment as long as sufficient notice is provided pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 280 (3d Cir. 2010); *Krebs v. Rutgers*, 797 F. Supp. 1246, 1253 (D.N.J. 1992); *see also* Fed. R. Civ. P. 56(f). Here, the Court provided sufficient notice to the parties of its intention to convert Plaintiffs' application for a

preliminary injunction into a summary judgment motion, (*see* ECF No. 6), and there was no objection by the parties.  As such, the Court will proceed to the merits of the dispute.

**III.    DISCUSSION**

Plaintiffs argue that Defendants should be enjoined from enforcing the NJHAA because it (1) is preempted by federal law under the doctrines of express and implied preemption; (2) violates the dormant Commerce Clause by discriminating against out of state hemp manufacturers, distributers, and sellers; and (3) is unconstitutionally vague and violates the "void for vagueness" doctrine.  (Moving Br. at 2–3.)  The Court will address each argument in turn.

**A.  FEDERAL PREEMPTION**

Plaintiffs' first argument is that the NJHAA is preempted by the Farm Bill, and therefore is unconstitutional.  (Moving Br. at 2–3.)  More specifically, Plaintiffs argue that the "criminalization of Excluded Hemp in the Amendments is preempted by express preemption, field preemption, and implied conflict preemption."  (Moving Br. at 17.)  In their reply brief, Plaintiffs argue that the presumption against preemption does not apply "in cases concerning state regulation of an 'area of significant federal presence'" as is the case here.  (Reply Br. at 2 (quoting *CoreCivic, Inc. v. Murphy*, 690 F. Supp. 3d 467, 487 (D.N.J. 2023))).  Plaintiffs emphasize that the NJHAA is not expressly preempted because it redefines "hemp"; rather, "[i]t is Plaintiffs' position that if New Jersey wants to redefine 'hemp' in its own laws, it is constitutionally required do so in a way that is consistent with the express terms of the 2018 Farm Bill."  (Reply Br. at 8–9.)

The Supremacy Clause of the U.S. Constitution provides that, "the Laws of the United States . . . shall be the supreme law of the Land," and state law is invalid if federal law preempts state law.  U.S. Const. art. VI, cl. 2.  "Express preemption occurs when a federal law contains express language providing for the preemption of any conflicting state law."  *Kurns v. A.W.*

*Chesterton Inc.*, 620 F.3d 392, 395 (3d Cir. 2010) (citation omitted). "Implied conflict preemption occurs when it is either impossible for a private party to comply with both state and federal requirements [i.e., conflict preemption], or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress [i.e., field preemption]." *Id.* at 395–96 (internal quotation marks and citations omitted).

In every preemption case, the court's inquiry is guided by two principles. *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010). First, the intent of Congress is the "ultimate touchstone" of the preemption analysis. *Medtronic, Inc., v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotation marks omitted). To understand Congress's intent, courts look "not only to Congress's express statements, but also to the 'structure and purpose of the statute as a whole.'" *Farina*, 625 F.3d at 115 (quoting *Medtronic, Inc.*, 518 U.S. at 486). Second, courts "start[ ] with the basic assumption that Congress did not intend to displace state law." *Id.* (alteration in original) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). "[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Lohr*, 518 U.S. at 485. This presumption against preemption applies with "particular force" in fields within the police power of the state. *Farina*, 625 F.3d at 115.

Regarding express preemption, Plaintiffs contend that the Farm Bill is clear in its preemption efforts because, as noted above, it dictates that no State "shall prohibit the transportation or shipment of hemp or hemp products" through the State. (Moving Br. at 17 (quoting Pub. L. 115-334, § 10114)). Plaintiffs assert that there will be cases—and are cases— where hemp or hemp products are legal federally, but illegal in New Jersey, and therefore, the parts of the NJHAA prohibiting hemp or hemp products from being shipped or transported through New Jersey is in direct conflict with Section 10114. (Moving Br. at 18, 28.) Plaintiffs rely on a

decision from the Court of Appeals for the Seventh Circuit that affirmed an injunction preventing Indiana from enforcing a state law that restricted the transportation of hemp because "[a] State cannot evade the Farm [Bill's] express preemption of laws prohibiting the interstate transportation of industrial hemp by criminalizing its possession and delivery."  (Moving Br. at 20 (quoting *C.Y. Wholesale, Inc.*, 965 F.3d at 549.))[4]

Defendants respond that the Farm Bill's express preemption provision only concerns interstate hemp transportation and shipment, which the NJHAA does not address.  (Opp'n Br. at 3.)  Moreover, according to Defendants, there is no express preemption because the NJHAA does not impermissibly interfere with the interstate transportation of federally defined hemp.  (Opp'n Br. at 16.)  Defendants also claim that the New Jersey Hemp Farming Act permissibly calls for "establish[ing] procedures governing hemp shipment . . . across state lines by third-party transporters who are not authorized hemp producers."  N.J. Stat. Ann. § 4:28-11(c)(5).  (*Id.*)  Notably, Defendants argue that the fact that "Congress chooses to make a substance—here, industrial hemp as defined by its [D]elta-9 THC level—legal at the federal level . . . , [] does not mean that Congress has mandated that the substance must be legal in every state." (Opp'n Br. at 8 (quoting *N. Va. Hemp & Agric. LLC v. Virginia*, 700 F. Supp. 3d 407 (E.D. Va. 2023), and citing *C.Y. Wholesale, Inc.*, 965 F.3d at 548)).

As a threshold matter, the Court finds that the mere change of the definition of "hemp" by the NJHAA does not mean that it is unconstitutional or preempted.  The limited express preemption provision in the Farm Bill clearly provides that "[n]o State . . . shall prohibit the transportation or

---

[4] According to Plaintiffs, the biggest problem with the NJHAA is that federally legal items are being criminalized as a Schedule I CDS because hemp cultivated and produced outside of New Jersey is not exempt from the New Jersey Controlled Dangerous Substance Act.  (Reply Br. at 6 n.9.)  More specifically, Plaintiffs contend that "Excluded Hemp"—which is hemp above New Jersey's 0.3 total THC limit and made outside of New Jersey—is not a hemp product, a cannabis item, cannabis, or a cannabis product, and thus, is a controlled dangerous substance that cannot be transported, possessed, or shipped in New Jersey.  (*Id.*)

shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 . . . through the State." Pub. L. 115-334, § 10114 (codified at 7 U.S.C. § 1639o note). This means only that New Jersey cannot prohibit the transportation or shipment of hemp, despite the state government's usual police powers to protect public health and safety. *See City of El Paso v. Simmons*, 379 U.S. 497, 508 (1965). Notably, the express preemption provision, "standing alone," does not preclude a state from prohibiting the possession and sale of industrial hemp within the state; it merely prohibits states from regulating the transportation and shipment of hemp. *See C.Y. Wholesale, Inc.*, 965 F.3d at 547; *HW Premium CBD, LLC v. Reynolds*, Civ No. 24-00210, 2024 WL 3548320 at *7 (S.D. Iowa, July 25, 2024) ("There is nothing in the Farm Bill that stands for the proposition that Congress intended to preempt states from regulating any part of the hemp cultivation, production, manufacturing, or sales process, except the express preemption for interstate transportation.").

The NJHAA states that "transport" "shall not mean the movement or shipment of hemp products." N.J. Stat. Ann. § 4:28-8. It can therefore be reasonably presumed that the New Jersey Legislature was aware of Congress's express preemption provision in Section 10114, and intended not to violate it. Importantly, the NJHAA does not add the terms "transport" or "ship," or any derivative thereof to the New Jersey Hemp Farming Act.

Notwithstanding these efforts by the State Legislature, the Court finds that Plaintiffs are correct that the effect of the NJHAA violates Congress's express preemption provision. The NJHAA creates and defines the category of "Intoxicating Hemp Products" as hemp products cultivated and manufactured in New Jersey and sold in New Jersey, but does not recognize corresponding intoxicating hemp products cultivated, produced, or manufactured outside of New Jersey. Out-of-state hemp products, moreover, are not exempted from the Controlled Dangerous

Substance Act; therefore, they remain Schedule I controlled substances. In short, once the NJHAA becomes operative on October 12, 2024, it will effectively be a crime to transport or ship out-of-state intoxicating hemp products to, or through New Jersey. *See Bambu Sales, Inc.*, 474 F. Supp. at 1299 (noting that the purpose of the Controlled Dangerous Substance Act is to "suppress illegal traffic in narcotic drugs enumerated in it"); *see also C.Y. Wholesale, Inc.*, 965 F.3d 541, 549 (7th Cir. 2020) ("It may well be that Indiana, in proscribing the possession of industrial hemp, has illegally prohibited the transportation of interstate shipments of industrial hemp. Should that be the case, the district court may appropriately issue an injunction preventing Indiana from enforcing its law against those transporting smokable hemp through Indiana in interstate commerce.").

Accordingly, although there is no express language by the New Jersey Legislature that conflicts with Congress's express preemption provision in Section 10114 of the Farm Bill, the Court concludes that the relevant portions of the NJHAA that effectively makes it a crime to transport or ship hemp cultivated, derived, or manufactured outside New Jersey are nevertheless preempted by Section 10114.[5]

The Court emphasizes that the Legislature remains free to regulate the production of hemp in New Jersey. 7 U.S.C. § 1639p. The anti-preemption provision of the Farm Bill authorizes states to continue to regulate hemp production, by stating that "[n]othing in this subsection preempts or limits any law of a State or Indian tribe that . . . (i) regulates the production of hemp; and (ii) is more stringent than this subchapter. *Id.* Importantly, this provision only refers to "the production of hemp," not anything else related to hemp. As such, the New Jersey Legislature can continue to otherwise regulate the production of hemp as stringently as it would like so long is it does not prohibit the transportation or shipment of hemp or hemp products.

---

[5] The Court leaves to the Legislative and Executive branches of the State's government how best to adjust the NJHAA and/or its enforcement.

Insofar as the Court concludes that the NJHAA is expressly preempted in relevant part, the Court does not reach the parties' arguments with respect to implied preemption.

### B. DORMANT COMMERCE CLAUSE

Plaintiffs separately argue that that the treatment of out-of-state hemp products violates the dormant Commerce Clause because the NJHAA exempts hemp products that are made and sold in New Jersey from being a Schedule I CDS, but criminalizes hemp products from out of state that fail to meet New Jersey's new definition of "hemp." (Moving Br. at 24.) Plaintiffs emphasize that the NJHAA violates the dormant Commerce Clause because it discriminates against out-of-state companies and because it is unlawfully "protectionist" by (1) not allowing out-of-state hemp manufacturers and sellers to sell hemp products in New Jersey, (2) not allowing in-state retailers to purchase hemp products from out-of-state retailers, (3) dissuading consumers from buying hemp products from out-of-state retailers, and (4) limiting what products can be shipped or transported through New Jersey. (Moving Br. 25–26.) In their reply brief, Plaintiffs look to the text of the NJHAA—specifically, the "in this State" language in the definition of "Intoxicating Hemp Product"—to argue that "whether certain hemp products are prohibited under the New Jersey Criminal Code now depends on whether they are (1) cultivated, derived, or manufactured [in this State]; and (2) sold in this State." (Reply Br. at 9–10.) Thus, Plaintiffs argue that there is a clear protectionist intent behind the NJHAA because "out-of-state products would soon be deemed controlled dangerous substances, while in-state versions of the same product would not." (*Id.* at 10.)

Defendants argue that the NJHAA "withstand[s] Plaintiffs' dormant Commerce Clause challenge because [it has] neither [a] protectionist purpose nor effect." (Opp'n Br. at 3.) According to Defendants, "there is nothing in the [a]mendments that would prevent federally

defined hemp from passing through New Jersey." (Opp'n Br. at 17.) Defendants add that there is no dormant Commerce Clause violation because "[t]he Hemp Act Amendments were passed to serve the legitimate goal of protecting the health and safety of New Jersey residents, not to benefit in-state economic interests by burdening out-of-state competitors." (Opp'n Br. at 28 (quotation marks omitted)). Defendants note that "incidental burdens on interstate commerce may be unavoidable when a State legislates to safeguard the health and safety of its people." (Opp'n Br. at 31 (quoting *City of Phila. v. New Jersey*, 437 U.S. 617, 623–24 (1978))).[6] Lastly, Defendants contend that the NJHAA does not discriminate against out-of-state competitors, and therefore the NJHAA survives the balancing test established in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), used where a "statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental." (Opp'n Br. at 27, 31 (quoting *Pike*, 397 U.S. at 142)).

"The dormant Commerce Clause 'prohibits the states from imposing restrictions that benefit in-state economic interests at out-of-state interests' expense, thus reinforcing the principle of the unitary national market.'" *Am. Trucking Ass'ns v. Whitman*, 437 F.3d 313, 318 (3d Cir. 2006) (quoting *Cloverland–Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 298 F.3d 201, 210 (3d Cir. 2002)) (*Cloverland I*). The dormant Commerce Clause "therefore prohibits a state from impeding free market forces to shield in-state businesses from out-of-state competition." *Id.*

---

[6] On this point, Defendants argue that the "Commerce Clause doctrine 'does not elevate free trade above all other values.'" (Opp'n Br. at 27 (quoting *Maine v. Taylor*, 477 U.S. 131, 151 (1986))). In making this argument, Defendants contend that "[t]he Hemp Act Amendments were passed to serve the legitimate goal of protecting the health and safety of New Jersey residents, not 'to benefit in-state economic interests by burdening out-of-state competitors.'" (*Id.* at 28 (quoting *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023))). The Court finds that this argument lacks credence. At a later time in Defendants' brief, in response to Plaintiffs' vagueness challenge, Defendants claim that the void for vagueness doctrine does not apply to "civil statutes that regulate economic activities." (Opp'n Br. at 33.) This inconsistency demonstrates that it is unclear whether the NJHAA is designed to protect public safety or to regulate economic activities.

Any statute that "discriminates against interstate commerce on its face or in effect" is "subject to heightened scrutiny." *Freeman v. Corzine*, 629 F.3d 146, 158 (3d Cir. 2010) (quoting *Am. Trucking Ass'ns*, 437 F.3d at 319). "The party challenging the statute has the burden of proving" that the statute is discriminatory. *Cloverland–Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 462 F.3d 249, 261 (3d Cir. 2006) ("*Cloverland II* "). If the plaintiff meets that burden, "the State must demonstrate (1) that the statute serves a legitimate local interest, and (2) that this purpose could not be served as well by available nondiscriminatory means." *Am. Trucking Ass'ns*, 437 F.3d at 319. If the plaintiff does not meet its burden of showing that the statute is discriminatory, courts instead use "the balancing test set forth in *Pike v. Bruce Church, Inc.,* 397 U.S. 137 (1970), to determine whether the burdens on interstate commerce substantially outweigh[] the putative local benefits." *Cloverland II,* 462 F.3d at 258. *Pike* balancing is necessary because "States may not impose regulations that place an undue burden on interstate commerce, even where those regulations do not discriminate between in-state and out-of-state businesses." *Heffner v. Murphy*, 745 F.3d 56, 70–71 (3d Cir. 2014) (quoting *United States v. Lopez*, 514 U.S. 549, 579–80 (1995)).

Here, as noted above, the NJHAA grants differential treatment to in-state companies over out-of-state companies on its face and is thus subject to heightened scrutiny. The New Jersey Legislature included the phrase "in this State" to the definition of "Intoxicating Hemp Product," and therefore intended to create disparate treatment between hemp cultivated in New Jersey and hemp derived from outside of New Jersey. *See Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175, 187 (3d Cir. 2015), *rev'd on other grounds sub nom. Advoc. Health Care Network v. Stapleton*, 581 U.S. 468 (2017) (noting that "Congress [or state legislatures] mean what it says"). The NJHAA creates two categories for hemp that has greater than 0.3 percent total THC: (1)

intoxicating hemp—i.e., hemp that is derived, cultivated, or manufactured in New Jersey; and, (2) as Plaintiffs call it, excluded hemp—i.e., hemp that is derived, cultivated, or manufactured outside New Jersey. This alone is not discriminatory. It is the application and intersection of the NJHAA's definition of "Intoxicating Hemp Products" with the New Jersey Controlled Dangerous Substance Act and CREAMMA that run afoul of the dormant Commerce Clause.

For example, intoxicating hemp products cultivated, derived, or manufactured in New Jersey are exempt from the list of controlled substances in the New Jersey Controlled Dangerous Substance Act because they are now subject to licensing and other restrictions as required by CREAMMA. Intoxicating hemp products cultivated, derived, or manufactured outside New Jersey are criminalized as Schedule I controlled dangerous substances, regardless of whether they might meet New Jersey's regulatory scheme. This differential treatment between in-state and out-of-state interests favors New Jersey hemp companies over out-of-state competitors. The statutory scheme deliberately alters the stakes for out-of-state hemp producers by subjecting them to civil and criminal liability. *See New Jersey Staffing Alliance v. Fais*, 110 F.4th 201, 208 (3d Cir. 2024) (discussing protectionism).

The dormant Commerce Clause also precludes "attempts to give local consumers an advantage over consumers in other States," *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 580 (1986), which is exactly what the NJHAA in essence does. The NJHAA not only economically discriminates against out-of-state companies and consumers, but effectively criminalizes the possession, shipment, and transportation of out-of-state intoxicating hemp products by manufacturers, producers, and consumers, while simultaneously allowing intoxicating hemp products from New Jersey to survive. This protectionism does not survive heightened scrutiny.

As explained, the Court is concerned with the discriminatory impact and protectionist effects of portions of the NJHAA by which the Legislature seeks to regulate transportation or shipment of hemp and hemp products. There is no doubt to the Court that intoxicating hemp poses health and public safety risks. It is therefore appropriate for the Legislature to act to protect its citizens from products whose total THC content exceeds what the Legislature deems safe. However, the Legislature may not blatantly discriminate against out-of-state economic interests. To the extent that Defendants profess concerns that out-of-state products might avoid the controls imposed by state production and licensure standards, the state may impose reasonable quality and purity standards for products sold in state.[7]

Lastly, the NJHAA's targeting of out-of-state intoxicating hemp products has a practical effect of controlling interstate commerce extraterritorially. *See Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989). Because out-of-state intoxicating hemp products would soon be deemed controlled dangerous substances, while in-state versions of the same product would not, companies would be compelled to rethink their business plans.

In sum, the Court finds that the portions of the NJHAA that differentiate between in-state and out-of-state intoxicating hemp products does not survive heightened scrutiny under the dormant Commerce Clause.[8]

### C. SEVERABILITY

As a final point, Defendants argue that any unconstitutional provision in the NJHAA is severable. (Opp'n Br. at 39.) Plaintiffs respond that "the problems plaguing the [a]mendments

---

[7] Defendants contend that the NJHAA "aim[s] to preclude the sale of intoxicating hemp products produced in environments that do not meet New Jersey's production and licensure standards to advance the health and safety of the public, including children. Any burdens on interstate commerce resulting from that are incidental and do not exceed the significant public health local benefits that [the NJHAA] advance[s]." (Opp'n Br. at 32).

[8] Given the Court's conclusion as to NJHAA's conflict with the dormant Commerce Clause, it does not reach the parties' arguments with respect to the statute's vagueness under the Due Process Clause.

demand too much of a judicial scalpel and agency rulemaking," and therefore cannot be severed. (Reply Br. at 14.)

The issue of severability of a state statute, like the New Jersey Hemp Farming Act, is a question of state law, *Old Coach Dev. Corp. v. Tanzman*, 881 F.2d 1227, 1234 (3d Cir. 1989), and requires an inquiry into legislative intent, *Affiliated Distillers Brands Corp. v. Sills*, 289 A.2d 257, 258 (N.J. 1972). Under this inquiry, courts must determine whether "the objectionable feature [can] be excised without substantial impairment of or conflict with the over-all legislative purpose. . . ." *N.J. Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 396 (3d Cir. 2012) (alteration in original) (quoting *New Jersey Chapter, Am. Inst. of Planners v. New Jersey State Bd. of Pro. Planners*, 227 A.2d 313, 319 (N.J. 1967)). To sever a part of a statute, "there must be such a manifest independence of the parts as to clearly indicate a legislative intention that the constitutional insufficiency of the one part would not render the remainder inoperative." *Affiliated Distillers Brands Corp.*, 289 A.2d at 259 (internal quotation marks and citations omitted).

The Court disagrees with Plaintiffs. The unconstitutional portions of the NJHAA in dispute are severable and there is no basis to prevent enforcement of the remaining provisions of the NJHAA that are not at issue in this case. Beyond barring enforcement of part of the NJHAA, the Court declines to engage in any additional judicial surgery to cure the constitutional violations. Modification of the parts of the NJHAA to remedy the preemption and dormant Commerce Clause issues requires careful construction of language and analysis of other statutes at issue. *See Selvaggi v. Borough of Point Pleasant Beach*, Civ. No. 22-708, 2022 WL 1664623 *11 (D.N.J. May 25, 2022) (citing *Chamber of Commerce v. State*, 445 A.2d 353 (1982)). That task is better left to the Legislature. All the Court concludes today is that the provisions of the NJHAA that excludes otherwise compliant out-of-state intoxicating hemp and intoxicating hemp products from the

definition of "Intoxicating Hemp Products" cannot be enforced because those provisions are expressly preempted and would violate the dormant Commerce Clause.

**IV.**    <u>**CONCLUSION**</u>

For the reasons stated above, the Court will **GRANT-IN-PART and DENY-IN-PART** Plaintiffs' Motion for Summary Judgment. The State will be enjoined from enforcing the portions of the NJHAA that violates the Farm Bill's express preemption provision and the dormant Commerce Clause. Notably, the provision banning the sale or distribution of THC containing products to anyone under 21 years of age—which is not being challenged—shall remain in effect. *See* Pub. L. 2024, c. 73, § 4(b)(2). An appropriate Order will follow.


Date: October 10, 2024


<u>s/ Zahid N. Quraishi</u>
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**